**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **RSUI INDEMNITY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.: 16-cv-13019** |
| ) | |
| **ADI WORLDLINK, LLC d/b/a** ) | |
| **WORLDLINK, ZENOBIA ADI,** ) | |
| **and ADIL ADI,** ) | |
| ) | |
| **Defendants,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **TIMOTHY CURRY, DELANO** ) | |
| **BURTON, and OZIAS FOSTER,** ) | |
| ) | |
| **Indispensable Defendants.** ) | |

<u>**COMPLAINT FOR DECLARATORY JUDGMENT**</u>

NOW COMES Plaintiff, RSUI INDEMNITY COMPANY ("RSUI"), by and through its attorneys, TRAUB, LIEBERMAN, STRAUS & SHREWSBERRY, LLP., and for its Complaint for Declaratory Judgment against Defendants, ADI WORLDLINK, LLC d/b/a WORLDLINK, ZENOBIA ADI, and ADIL ADI (collectively, "DEFENDANTS"), and TIMOTHY CURRY, DELANO BURDEN, and OZIAS FOSTER (collectively, "INDISPENSABLE DEFENDANTS"), states as follows:

<u>**NATURE OF ACTION AND RELIEF SOUGHT**</u>

1.    Plaintiff, RSUI, is an insurance company that issued two "claims-made and reported" policies of insurance to defendant, ADI WORLDLINK, LLC d/b/a WORLDLINK ("WORLDLINK"), effective from December 31, 2013 to December 31, 2014, and from December 31, 2014 to December 31, 2015, respectively.  RSUI brings this Complaint for

Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, et seq., and Rule 57 of the Federal Rules of Civil Procedure.

2.    RSUI seeks a declaration that it does not owe a duty to defend or indemnify DEFENDANTS with regard to at least twenty-six complaints filed by at least thirty-two claimants with the American Arbitration Association against DEFENDANTS (collectively, "the Underlying Arbitrations").   Copies of the twenty-six complaints filed in the Underlying Arbitrations are attached hereto as Group Exhibit "A" and incorporated herein by reference.

3.    There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the policies of insurance issued by RSUI to WORLDLINK.  RSUI contends that there is no obligation to defend or indemnify DEFENDANTS in connection with the claims asserted in the Underlying Arbitrations based on the terms of the RSUI Policy and applicable law.

4.    RSUI has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the RSUI Policy.  A judicial declaration is appropriate at this time so that RSUI may ascertain its rights and duties with respect to defense and indemnity under the RSUI Policy for the Underlying Arbitrations.

5.    Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

6.    Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  Specifically, INDISPENSABLE DEFENDANTS are alleged to have performed work in

Michigan and DEFENDANTS are alleged not to have paid INDISPENSABLE DEFENDANTS for that work.

7.     In the alternative, venue is also appropriate in this district pursuant to 28 U.S.C. § 1391(b)(3) in that there is no other district in which an action may be brought against both DEFENDANTS and INDISPENSABLE DEFENDANTS, and both DEFENDANTS and INDISPENSABLE DEFENDANTS are subject to the Court's personal jurisdiction. Specifically, DEFENDANTS transact business in Michigan and enter into a contract for services to be rendered in Michigan because they: (a) maintain an office in Detroit, Michigan, and (b) regularly employ Michigan residents (including INDISPENSABLE DEFENDANTS) to perform work for them within Michigan.

## THE PARTIES

8.     RSUI is a New Hampshire insurance company with its principal place of business in Georgia.

9.     WORLDLINK is a Delaware limited liability corporation with its principal place of business in Texas.  WORLDLINK maintains an office in the Detroit, Michigan metro-area, which upon information and belief is presently located at 26677 West Twelve Mile, Southfield MI, 48034.

10.     WORLDLINK is a staffing agency that employed several of the parties to the Underlying Arbitrations. WORLDLINK employed these parties to conduct work in Michigan, and some of these parties reside in Michigan.

11.     ZENOBIA ADI is the Chief Operating Officer of WORLDLINK and a resident of Texas, and in her capacity as Chief Operating Officer, is assumed to maintain consistent

contact with and/or travels to WORLDLINK's Detroit, Michigan office, and/or has involvement with the daily operations of the Detroit office.

12. ADIL ADI is the Chief Executive Officer of WORLDLINK and a resident of Texas, and as Chief Executive Officer, is assumed to maintain contact with and/or travels to WORLDLINK's Detroit, Michigan office, and/or has involvement with the daily operations of the Detroit office.

13. TIMOTHY CURRY was employed by WORLDLINK to perform work for Samsung, Inc., in Flint, Michigan, and is a resident of Michigan.

14. DELANO BURTON was employed by WORLDLINK to perform work for Samsung, Inc. in Flint, Michigan, and is a resident of Michigan.

15. OZIAS FOSTER was employed by WORLDLINK to perform work for Samsung, Inc. in Novi, Michigan, and is a resident of Michigan.

16. INDISPENSABLE DEFENDANTS are three of at least thirty-two claimants who have sued DEFENDANTS for failing to pay claimants overtime compensation for the hours claimants worked in excess of 40 hours in a week. Upon information and belief, approximately seven additional claimants are residents of Michigan. Upon information and belief, the remaining claimants are residents of Washington, Wisconsin, California, Illinois, Oregon, Nevada, Ohio, Pennsylvania, and/or Minnesota.

## FACTUAL BACKGROUND

**A.  THE LAMB ARBITRATION**

17. On July 31, 2014, DEFENDANTS were named as defendants in an original complaint filed by Derek Lamb and Doan Nguyen with the American Arbitration Association ("the Lamb Arbitration").

18.     The Lamb Arbitration alleges that the claimants worked for WORLDLINK in the states of Washington and Wisconsin.

19.     The Lamb Arbitration also alleges the claimants held positions as IMP Engineers, earning approximately $90,000 per year.

20.     The Lamb Arbitration alleges that the claimants' job duties required the claimants to install equipment on telecommunications towers.

21.     The Lamb Arbitration alleges that while working for WORLDLINK, the claimants often worked in excess of 40 hours in a week but were not compensated for the excess hours worked.

22.     The Lamb Arbitration alleges that WORLDLINK violated the Fair Labor Standards Act ("FLSA") by failing to pay claimants overtime compensation for the hours claimants worked in excess of 40 hours in a week.

23.     The Lamb Arbitration alleges that WORLDLINK violated the wage and hour laws of Washington and Wisconsin as a result of its failure to pay the claimants overtime compensation for all hours worked in excess of 40 hours in a week.

24.     The claimants in the Lamb Arbitration seek to recover from DEFENDANTS the amounts of unpaid regular and overtime compensation owed to the claimants as well as liquidated damages as allowed under the FLSA.

25.     WORLDLINK received the complaint filed in the Lamb Arbitration on August 5, 2014.

## B.     THE BURTON ARBITRATION

26.     On April 27, 2015, DEFENDANTS were named as defendants in an original complaint filed by Delano Burton and Timothy Curry with the American Arbitration Association

("the Burton Arbitration").  The Burton Arbitration has been twice amended and is presently pending as a Second Amended Collective Action Complaint.

27.     The Second Amended Complaint alleges that WORLDLINK is privately held by ADIL ADI.

28.     The Second Amended Complaint in the Burton Arbitration alleges that ZENOBIA ADI is sued as the Chief Operating Officer of WORLDLINK and is assumed to have ownership shares in the company.  The Second Amended Complaint further alleges that "Zenobia is responsible for the daily operations of the company … She is in charge of strategizing company goals based on customer, employee and organizational requirements.

29.     The Burton Arbitration alleges that both Delano Burton and Timothy Curry worked for WORLDLINK primarily in the state of Michigan.

30.     The Burton Arbitration alleges that jurisdiction before the American Arbitration Association is proper pursuant to arbitration clauses signed by Delano Burton and Timothy Curry.

31.     Upon information and belief, the arbitration clauses signed by Delano Burton and Timothy Curry are contained in a Labor Services Agreement that was governed by the location in which Delano Burton and Timothy Curry performed services, which agreement is, upon information and belief, is identical in all material respects to the Agreement in Exhibit "B."

32.     The Burton Arbitration alleges that the claimants worked for WORLDLINK in the states of Michigan, North Dakota, South Dakota, Nebraska, Iowa, Minnesota, Illinois, Missouri, Illinois Wisconsin, Indiana, and Ohio.

33.     The Burton Arbitration also alleges the claimants held positions as IMP Engineers, earning approximately $90,000 per year.

34.     The Burton Arbitration alleges that the claimants' job duties required the claimants to install equipment on telecommunications towers.

35.     The Burton Arbitration alleges that while working for WORLDLINK, the claimants often worked in excess of 40 hours in a week but were not compensated for the excess hours worked.

36.     The Burton Arbitration alleges that WORLDLINK violated the FLSA by failing to pay claimants overtime compensation for the hours claimants worked in excess of 40 hours in a week.

37.     The Burton Arbitration alleges that WORLDLINK violated the wage and hour laws of Michigan, Illinois, and Minnesota as a result of its failure to pay the claimants overtime compensation for all hours worked in excess of 40 hours in a week.

38.     The claimants in the Burton Arbitration seek to recover from DEFENDANTS the amounts of unpaid regular and overtime compensation owed to the claimants as well as liquidated damages as allowed under the FLSA.

## C.     THE GRIER ARBITRATION

39.     On May 11, 2015, DEFENDANTS were named as defendants in an original complaint filed by Christopher Grier, George Owusu, Dustin Nguyen, Nathan Nesbit, and Leon Townsend with the American Arbitration Association ("the Grier Arbitration").

40.     The Grier Arbitration alleges the claimants worked for WORLDLINK in the states of California, Nevada, Oregon and Washington.

41.     The Grier Arbitration also alleges the claimants held positions as IMP Engineers, earning approximately $90,000 per year.

42. The Grier Arbitration alleges that the claimants' job duties required the claimants to install equipment on telecommunications towers.

43. The Grier Arbitration alleges that while working for WORLDLINK, the claimants often worked in excess of 40 hours in a week but were not compensated for the excess hours worked.

44. The Grier Arbitration alleges that WORLDLINK violated the FLSA by failing to pay claimants overtime compensation for the hours claimants worked in excess of 40 hours in a week.

45. The Grier Arbitration alleges that WORLDLINK violated the wage and hour laws of California, Nevada, and Washington as a result of its failure to pay the claimants overtime compensation for all hours worked in excess of 40 hours in a week.

46. The claimants in the Burton Arbitration seek to recover from DEFENDANTS the amounts of unpaid regular and overtime compensation owed to the claimants as well as liquidated damages as allowed under the FLSA.

## D. THE WADE ARBITRATION

47. On January 7, 2016, DEFENDANTS were named as defendants in an original complaint filed by Clifton Wade with the American Arbitration Association ("the Wade Arbitration").

48. The Wade Arbitration alleges the claimant worked for WORLDLINK in Minnesota.

49. The Wade Arbitration also alleges the claimant held a position as an IMP Engineer, earning approximately $90,000 per year.

50.     The Wade Arbitration alleges that the claimant's job duties required the claimant to install equipment on telecommunications towers.

51.     The Wade Arbitration alleges that while working for WORLDLINK, the claimant often worked in excess of 40 hours in a week but was not compensated for the excess hours worked.

52.     The Wade Arbitration alleges that WORLDLINK violated the FLSA by failing to pay claimant overtime compensation for the hours claimant worked in excess of 40 hours in a week.

53.     The Wade Arbitration alleges that WORLDLINK violated the wage and hour laws of Minnesota as a result of its failure to pay the claimant overtime compensation for all hours worked in excess of 40 hours in a week.

54.     The claimant in the Wade Arbitration seeks to recover from DEFENDANTS the amounts of unpaid regular and overtime compensation owed to the claimant as well as liquidated damages as allowed under the FLSA.

**E.     THE 2016 SEVERED ARBITRATIONS**

55.     Each of the following individuals filed an FLSA Action Consent Form consenting to be a party to the Burton Arbitration and agreeing to pursue his or her claims arising out of unpaid overtime as an employee of DEFENDANTS: (1) Angelo Adams, (2) Christopher Murdock, (3) Clarence Cook, (4) Derek Means, (5) Harom Pringle, (6) James Berdahl, (7) Johnny Henry, (8) Kevin Astrop, (9) Kevin Royster, (10) Lester Wells, (11) Mark Laws, (12) Mervin McGirt, (13) Ozias Foster, (14) Rene Colon, (15) Richard Giron, (16) Richard Sheehan, (17) Robert Seymour, (18) Royce Ellison, (19) Thai Khatiya, (20) Tim Curry, (21) Tyrone Henderson, and (22) Tyrone Irby.

56.    Upon information and belief, DEFENDANTS filed a motion to dismiss the allegations made by the twenty-two individuals seeking to join the Burton Arbitration.

57.    The Arbitrator in the Burton Arbitration granted DEFENDANTS' motion to dismiss, resulting in the severance of the twenty-two claims from the Burton Arbitration.

58.    In 2016, the twenty-two individual whose claims were severed from the Burton Arbitration each filed individual complaints against DEFENDANTS with the American Arbitration Association ("the 2016 Severed Arbitrations").

59.    The 2016 Severed Arbitrations include an Original Complaint filed by Clarence Cook, who alleges that he worked for defendants primarily in the State of Michigan.  The Original Complaint filed by Clarence Cook alleges that DEFENDANTS violated Michigan law.

60.    The 2016 Severed Arbitrations include an Original Complaint filed by Derek Means, who alleges that he worked for defendants primarily in the States of Michigan and California.  The Original Complaint filed by Derek Means alleges that DEFENDANTS violated Michigan law.

61.    The 2016 Severed Arbitrations include an Original Complaint filed by Kevin Astrop, who alleges that he worked for defendants primarily in the State of Michigan.  The Original Complaint filed by Kevin Astrop that DEFENDANTS violated Michigan law.

62.    The 2016 Severed Arbitrations include an Original Complaint filed by Lester Wells, who alleges that he worked for defendants primarily in the State of Michigan.  The Original Complaint filed by Lester Wells that DEFENDANTS violated Michigan law.

63.    The 2016 Severed Arbitrations include an Original Complaint filed by Ozias Foster, who alleges that he worked for defendants primarily in the State of Michigan.  The Original Complaint filed by Ozias Foster that DEFENDANTS violated Michigan law.

64.     The 2016 Severed Arbitrations include an Original Complaint filed by Rene Colon, who alleges that he worked for defendants primarily in the States of Michigan, Minnesota, Illinois and California.  The Original Complaint filed by Rene Colon alleges that DEFENDANTS violated Michigan law.

65.     The 2016 Severed Arbitrations include an Original Complaint filed by Richard Gyron, who alleges that he worked for defendants primarily in the States of Michigan, Illinois and Pennsylvania.  The Original Complaint filed by Richard Gyron alleges that DEFENDANTS violated Michigan law.

66.     The 2016 Severed Arbitrations include an Original Complaint filed by Tyrone Irby, who alleges that he worked for defendants primarily in the States of Michigan and Illinois. The Original Complaint filed by Tyrone Irby alleges that DEFENDANTS violated Michigan law.

67.     The 2016 Severed Arbitrations allege that the claimants held positions as IMP Engineers for WORLDLINK, earning approximately $90,000 per year.

68.     The 2016 Severed Arbitrations allege that claimants' job duties required the claimants to install equipment on telecommunications towers.

69.     The 2016 Severed Arbitrations allege that while working for WORLDLINK, the claimants often worked in excess of 40 hours in a week but were not compensated for the excess hours worked.

70.     The 2016 Severed Arbitrations allege that WORLDLINK violated the FLSA by failing to pay claimants overtime compensation for the hours claimants worked in excess of 40 hours in a week.

71.     The 2016 Severed Arbitrations allege that WORLDLINK violated the wage and hour laws of various states as a result of its failure to pay the claimants overtime compensation for all hours worked in excess of 40 hours in a week.

72.     The claimants in the 2016 Severed Arbitrations seek to recover from DEFENDANTS the amounts of unpaid regular and overtime compensation owed to the claimants as well as liquidated damages as allowed under the FLSA.

**F.      NOTICE TO RSUI OF THE UNDERLYING ARBITRATIONS**

73.     RSUI did not receive notice of the Lamb Arbitration, from DEFENDANTS or from any other source, until September 16, 2015.

74.     RSUI did not receive notice of the Burton Arbitration, from DEFENDANTS or from any other source, until September 16, 2015.

75.     RSUI did not receive notice of the Grier Arbitration, from DEFENDANTS or from any other source, until September 16, 2015.

76.     RSUI did not receive notice of the Wade Arbitration, from DEFENDANTS or from any other source, until January 7, 2016.

77.     RSUI did not receive notice of the 2016 Severed Arbitrations, from DEFENDANTS or from any other source, until February 18, 2016.

<u>**APPLICABLE INSURANCE POLICIES**</u>

78.     RSUI issued a Directors & Officers Liability Policy to WORLDLINK bearing policy number NHP655407, which was effective from December 31, 2013 to December 31, 2014 (the "13-14 RSUI Policy").  See Exhibit "C."

79.     RSUI issued a Directors & Officers Liability Policy to WORLDLINK bearing policy number NHP660866, which is effective from December 31, 2014 to December 31, 2016 (the "14-16 RSUI Policy"). See Exhibit "D."

80.     The 13-14 RSUI Policy and the 14-16 RSUI Policy (collectively referred to as "the RSUI Policies"), contain the following Insuring Agreement:

> In consideration of the payment of premium and in reliance upon all statements made to the **Insurer** in the **Application**, and subject to the terms, conditions, definitions, exclusions and limitations hereinafter provided, the **Insurer** agrees:

### SECTION I. – INSURING AGREEMENTS
* * *
**B.**     With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against any **Insured Person** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** for which the **Insured Organization** is required or permitted to indemnify the **Insured Person**.

**C.**     With the **Insured Organization** that if a **Claim** for a **Wrongful Act** is first made against the **Insured Organization** during the **Policy Period** and reported in accordance with SECTION V. – CONDITIONS, C. Notice of Claim or Circumstance of this policy, the **Insurer** will pay on behalf of the **Insured Organization** all **Loss** the **Insured Organization** is legally obligated to pay.

81.     The RSUI Policies define the bolded terms contained in the Insuring Agreement as follows:

### SECTION III. – DEFINITIONS
* * *
**B.**     **Claim**, either in the singular or plural, means:
  **1.**     A written demand for monetary or non-monetary relief;
  **2.**     A civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:
      **a.**     Receipt or service of a complaint or similar pleading;
      **b.**     Return of an indictment (in the case of a criminal proceeding); or
      **c.**     Receipt of a notice of charges;

**3.** An administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or equivalent state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint of similar document of which notice has been given to the Insured.

The DEFINITION of **Claim** shall include **Employment Practices Claim**; provided the DEFINITION of **Claim** shall not include any internal or external labor or grievance proceeding which is pursuant to a collective bargaining agreement.

**C.** **Defense Expenses** means reasonable and necessary legal fees and expenses incurred, with the **Insurer's** consent, by any **Insured** in defense of a **Claim**, including any appeal therefrom. **Defense Expenses** however, shall not include:

**1.** Remuneration, overhead or benefit expenses associated with any **Insured Person**; or

**2.** Any obligation to apply for or furnish any appellate or similar bond.

\* \* \*

**G.** **Insured** means any **Insured Organization** and/or any **Insured Person**.

**H.** **Insured Organization** means:

**1.** The organization named in Item 1. of the Declarations Page and any **Subsidiary** existing prior to or at the inception date of this policy; or

**2.** Subject to SECTION V. – CONDITIONS, I. Merger, Consolidation or Acquisition of this policy, **Insured Organization** shall mean any **Subsidiary** created or acquired after the inception date of this policy; or

**3.** In the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States), if any.

**I.** **Insured Person** means

**1.** Any past, present or future director, officer or **Employee**, management committee members or members of the Board of Managers of the **Insured Organization**; or

**2.** In the event the **Insured Organization** or a **Subsidiary** thereof operates outside of the United States, then the term **Insured Person** also means those titles, positions or capacities for such foreign **Insured Organization** or **Subsidiary** that are equivalent to the positions of directors or officers in the United States.

\* \* \*

**K.** **Loss** means damages (including back pay and front pay), settlements, judgments (including pre- and post-judgment interest on a covered

judgment) and **Defense Expenses**. **Loss** (other than **Defense Expenses**) shall not include:

1. Any amount for which the **Insureds** are not financially liable or for which there is not legal recourse to the **Insureds**;
2. Amounts owed under any employment contract, partnership, stock or other ownership agreement, or any other type of contract;
3. Disability, social security, workers compensation, medical insurance, retirement or pension benefit payments, or settlement amounts representing employment related benefit payments;
4. The cost of creating or reinstating employment;
5. Any amounts owed to any **Employee** as wages or compensation previously incurred or vested without regard to any **Claim**;
6. Civil or criminal fines or penalties;
7. Taxes, whether owed to or by any **Insured**;
8. Amounts, including **Defense Expenses**, arising out of, based upon or attributable to actual or alleged liability or costs incurred by any **Insured** to modify any building or property in order to make such building or property more accessible or accommodating to any disabled person, or any actual or alleged liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an **Employee Practices Claim**;
9. Matters that may be uninsurable under the law pursuant to which this policy construed.

The DEFINITION of **Loss** shall include punitive or exemplary damages and the multiplied portion of any multiplied damages award, if and where insurable. For purposes of determining whether punitive or exemplary damages, or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the **Insurer** agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insured** in that regard.

\* \* \*

**N.** **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or beach of duty or any actual or alleged **Employment Practices Wrongful Act**, by:

1. An **Insured Person** acting in his or her capacity as such an on behalf of the **Insured Organization** or any matter claimed against them solely by reason of their status as an **Insured Person**; or
2. The **Insured Organization**.

82. Subsection C. of Section V. of the RSUI Policies (as amended) provides in relevant part as follows:

**C.** **Notice of Claim or Circumstance**

1.      If, during the **Policy Period** or Discovery Period (if applicable), any **Claim** is first made, it shall be a condition precedent to the **Insurer's** obligation to pay, that the **Insured** give written notice of such **Claim** to the **Insurer** as soon as practicable after the Insured's Chief Executive Officer, Chief Financial Officer, General Counsel, or Risk Manager of the **Insured Organization** or equivalent person first becomes aware of the **Claim**, but in no event shall such notice be given after either the expiration date or any earlier cancellation date of this policy or sixty (60) days after the expiration or earlier cancellation date of this policy if the **Claim** is first made against and [sic] **Insured** during the final 30 days of the **Policy Period**.

2.      If, during the **Policy Period** of Discovery Period (if applicable), any **Insured** first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a **Claim** against any **Insured** and, as soon as practicable thereafter, but before the expiration date or earlier cancellation date of this policy, gives to the **Insurer** written notice, of such facts or circumstances along with the full particulars described below, then any **Claim** subsequently made against any **Insured** arising out of such facts or circumstances will be deemed first made during the **Policy Period**. The written notice shall include, at a minimum:

 a. The names or identity of the potential claimants and a detailed description of the specific alleged **Wrongful Act**; and

 b. The circumstances by which the **Insured** first became aware of the specific alleged **Wrongful Act**.

83.     Subsection B. of Section V. of the RSUI Policies provides, in pertinent part, as follows:

**B.      Limit of Liability; Retention; Payment of Loss**

\* \* \*

**2.**     As a condition precedent to coverage under this policy, the **Insured** shall pay with respect to each **Claim** the applicable Retention amount, as identified in Item 4. of the Declarations Page. The Retention amount shall be reduced solely by covered **Loss** and shall be applied to all **Loss**, including **Defense Expenses**, and the **Insurer** shall only be liable for the amount of **Loss** that is excess of the stated Retention amount.

**3.**     All **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or

related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a single **Claim** for all purposes under this policy, shall be subject to the Retention stated in Item 4. Of the Declarations Page, and shall be deemed first made when the earliest of such **Claim** is first made, regardless of whether such date is before or during the **Policy Period**.

**COUNT I – DECLARATORY JUDGMENT**
**NO COVERAGE FOR THE LAMB ARBITRATION (13-14 RSUI POLICY)**

84.     RSUI incorporates and re-alleges Paragraphs 1 through 83 above as and for Paragraph 84, as if fully set forth herein.

85.     The Lamb Arbitration was initiated and served upon DEFNDANTS during the 13-14 RSUI Policy.

86.     The Lamb Arbitration constitutes a "Claim" as that term is defined by the RSUI Policies because it is an arbitration proceeding.

87.     The 13-14 RSUI Policy required DEFENDANTS to provide written notice of the Lamb Arbitration prior to the expiration of the 13-14 RSUI Policy on December 31, 2014.

88.     RSUI was not provided written notice of the Lamb Arbitration until September 16, 2015, approximately nine months after the expiration of the 13-14 RSUI Policy.

89.     RSUI, therefore, is not obligated to pay any "Loss" in connection with the Lamb Arbitration under the 13-14 RSUI Policy.

WHEREFORE, Plaintiff RSUI INDEMNITY COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 13-14 RSUI Policy, together with the following relief:

a.      That this Court find and declare that RSUI has no duty to defend DEFENDANTS under the 13-14 RSUI Policy in the Lamb Arbitration;

    b.     That this Court find and declare that RSUI has no duty to indemnify DEFENDANTS under the 13-14 RSUI Policy in the Lamb Arbitration;

    c.     That this Court grant such other and further relief as it deems just and equitable.

## COUNT  II – DECLARATORY JUDGMENT
## NO COVERAGE FOR THE LAMB ARBITRATION (14-16 RSUI POLICY)

90.     RSUI incorporates and re-alleges Paragraphs 1 through 89 above as and for Paragraph 90, as if fully set forth herein.

91.     The Lamb Arbitration was initiated and served upon DEFNDANTS during the 13-14 RSUI Policy.

92.     The Lamb Arbitration constitutes a "Claim" as that term is defined by the RSUI Policies because it is an arbitration proceeding.

93.     The 14-16 RSUI Policy only provides coverage for "Claims" that are "first made" against DEFENDANTS between December 31, 2014 and December 31, 2016.

94.     The Lamb Arbitration is a claim that was first made against DEFENDANTS during the 13-14 RSUI Policy.

95.     RSUI is, therefore, not obligated to pay any "Loss" in connection with the Lamb Arbitration under the 14-16 RSUI Policy.

WHEREFORE, Plaintiff RSUI INDEMNITY COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 14-16 RSUI Policy, together with the following relief:

    a.     That this Court find and declare that RSUI has no duty to defend DEFENDANTS under the 14-16 RSUI Policy in the Lamb Arbitration;

    b.     That this Court find and declare that RSUI has no duty to indemnify DEFENDANTS under the 14-16 RSUI Policy in the Lamb Arbitration;

     c.     That this Court grant such other and further relief as it deems just and equitable.

**COUNT  III – DECLARATORY JUDGMENT**
**NO COVERAGE FOR THE BURTON ARBITRATION, GRIER ARBITRATION,**
**WADE ARBITRATION, OR 2016 SEVERED ARBITRATIONS (14-16 RSUI POLICY)**

96.     RSUI incorporates and re-alleges Paragraphs 1 through 95 above as and for Paragraph 96, as if fully set forth herein.

97.     The Burton Arbitration, Grier Arbitration, Wade Arbitration, and 2016 Severed Arbitrations were all initiated and received by DEFENDANTS during the 14-16 RSUI Policy.

98.     The Underlying Arbitrations all allege that the claimants: (1) worked for Worldlink; (2) were employed as IMP Engineers that, as a part of their duties, were required to install equipment on telecommunications towers; (3) earned approximately $90,000 a year; (4) worked in excess of 40 hours in a week; and (5) were not paid overtime compensation for the hours worked in excess of 40 hours in a week.

99.     The Underlying Arbitrations all allege that all assert that DEFENDANTS violated the FLSA and similar state wage and hour laws due to DEFENDANTS' failure to pay claimants overtime compensation.

100.    The Lamb Arbitration and the Burton Arbitration, Grier Arbitration, Wade Arbitration, and 2016 Severed Arbitrations are based on, arise out of, result from and/or involve the same related facts, circumstances, and/or situations.

101.    As the Lamb Arbitration and the Burton Arbitration, Grier Arbitration, Wade Arbitration, and 2016 Severed Arbitrations are all based on the same related facts, circumstances and/or situations, Subsection B.3. of Section V. applies and the Lamb Arbitration and the Burton Arbitration, Grier Arbitration, Wade Arbitration, and 2016 Severed Arbitrations constitute one "claim."

102.    The 14-16 RSUI Policy only provides coverage for "Claims" that are "first made" against DEFENDANTS between December 31, 2014 and December 31, 2016.

103.    The earliest of these related "Claims" – the Lamb Arbitration – was initiated on July 31, 2014, during the 13-14 Policy.

104.    The Burton Arbitration, Grier Arbitration, Wade Arbitration, and 2016 Severed Arbitrations, which constitute a single "Claim" with the Lamb Arbitration pursuant to the terms of the RSUI Policies, were first made against DEFENDANTS during the 13-14 RSUI Policy.

105.    RSUI is, therefore, not obligated to pay any "Loss" in connection with the Burton Arbitration, Grier Arbitration, Wade Arbitration, or 2016 Severed Arbitrations under the 14-16 RSUI Policy.

WHEREFORE, Plaintiff RSUI INDEMNITY COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 14-16 RSUI Policy, together with the following relief:

a.    That this Court find and declare that RSUI has no duty to defend DEFENDANTS under the 14-16 RSUI Policy in the Burton Arbitration, Grier Arbitration, Wade Arbitration, or 2016 Severed Arbitrations;

b.    That this Court find and declare that RSUI has no duty to indemnify DEFENDANTS under the 14-16 RSUI Policy in the Burton Arbitration, Grier Arbitration, Wade Arbitration, or 2016 Severed Arbitrations;

c.    That this Court grant such other and further relief as it deems just and equitable.

### COUNT  IV – DECLARATORY JUDGMENT (ALTERNATIVE)
### EACH ARBITRATION IS SUBJECT TO A SEPARATE $500,000 RETENTION

106.    RSUI incorporates and re-alleges Paragraphs 1 through 105 above as and for Paragraph 106, as if fully set forth herein.

107.    The RSUI Policies contain a SUBLIMIT-DEFENSE EXPENSES – WAGE AND HOUR CLAIMS Endorsement (hereinafter the "Wage and Hour endorsement"), which provides as follows:

> The amount set forth in Item 3. of the Declarations Page shall be the maximum aggregate Limit of Liability for all **Loss** under this policy. Subject to the foregoing, this Policy shall allow up to $100,000 solely for **Defense Expenses** in connection with **Claims** made against any **Insured** for violation of the Fair Labor Standards Act or any similar state or local law or regulation specifically governing the payment of wages or hours worked ("**Wage and Hour Claim**"). This sublimit shall be part of and not in addition to the amount set forth in Item 3. of the Declarations Page, and shall not act to create coverage for any form of relief sought or available in any **Wage and Hour Claim**.
>
> A Retention in the amount of $500,000 shall apply to any **Wage and Hour Claim**. Such Retention shall be borne by the **Insured**, and the **Insurer** shall only be liable for the amount of **Defense Expenses** in excess of the above stated Retention amount.

108.    Pursuant to the Wage and Hour endorsement, each "Wage and Hour Claim" requires payment of a $500,000 per claim Retention.

109.    In the alternative, the Underlying Arbitrations each make a "Claim" for violation of the FLSA and similar state or local laws specifically governing the payment of wages or hours worked and, therefore, constitute "Wage and Hour Claims."

110.    In the alternative, to the extent the Underlying Arbitrations constitute separate independent "Claims," each of the Underlying Arbitrations would be subject to a $500,000 Retention.

111.    In addition, to the extent the Underlying Arbitrations constitute separate independent "Claims," RSUI would only be obligated to pay $100,000 in "Defense Expenses" incurred in each of those "Claims" after exhaustion of the Retention.

WHEREFORE, in the alternative, Plaintiff RSUI INDEMNITY COMPANY prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the 14-16 RSUI Policy, together with the following relief:

a.    That this Court find and declare that the Burton Arbitration, Grier Arbitration, Wade Arbitration, and the twenty-two arbitration proceedings comprising the 2016 Severed Arbitrations are each subject to a separate $500,000 retention;

b.    That this Court find and declare that, once a separate $500,000 retention is exhausted for the Burton Arbitration, Grier Arbitration, Wade Arbitration, and the twenty-two arbitration proceedings comprising the 2016 Severed Arbitrations, RSUI is only obligated to pay $100,000 in "Defense Expenses" incurred in each of those "Claims."

c.    That this Court grant such other and further relief as it deems just and equitable.


Dated: August 19, 2016                    Respectfully submitted,

                                          /s/ Brian C. Bassett
                                          Brian C. Bassett
                                          Traub Lieberman Straus & Shrewsberry LLP
                                          303 W. Madison St., Suite 1200
                                          Chicago, Illinois 60606
                                          (P) 312-332-3900
                                          (F) 312-332-3908
                                          bbassett@traublieberman.com